OPINION
This case, which demonstrates the many perils involved in lending money to family members, comes before us, for the third time, on appeal from a judgment of the Lake County Court of Common Pleas.
Originally, the case involved a complaint by appellee, Jennie Dolce, against Alaina Lawrence (nka Alaina Gallese). After the second appeal, filed by Robert Gallese, Ms. Gallese's father, he was added as a defendant and is also the appellant in this case. Mr. Gallese was allowed to file an appeal as a nonparty because the trial court had entered an order allowing the garnishment of his bank accounts, which adversely affected him.
In 1988, appellant wrote several personal checks, totaling more than $42,000, to his now former son-in-law, Joseph Lawrence, to start a business. Though the checks were written only to Mr. Lawrence, notations in appellant's checkbook indicated that they were for "Alaina and Joe's store." Appellant obtained the $42,000 from a line of credit against his house. In 1990, appellant asked Mr. Lawrence to pay some of the $42,000 back so that he could avoid penalties against his line of credit. Mr. Lawrence and his now ex-wife, Ms. Gallese, attempted to get a loan to pay appellant, but were unable to do so by themselves. The Lawrences convinced appellee, Mr. Lawrence's grandmother, to co-sign for them so they could get a loan from National City Bank ("NCB"). The loan was secured by a mortgage on appellee's house. From this loan, the Lawrences paid Mr. Gallese approximately $20,000, leaving a balance due him in excess of $22,000.
In 1992, the Lawrences separated and were involved in divorce proceedings, which are now final. In October of 1993, Mr. Lawrence filed for bankruptcy. Appellant supplied his daughter with money to pay her attorneys in her divorce proceedings and to represent her possible interests in Mr. Lawrence's bankruptcy proceedings. He also supplied $5,000 for her to purchase the home from the bankruptcy estate. At trial, appellant claimed that the money supplied was a loan, and that, together with the $42,000 he previously lent his daughter and Mr. Lawrence, his combined loans to his daughter totaled over $56,000.
In December of 1993, Kimberly A. Purcell, a collection officer for NCB, informed Ms. Gallese that she and Mr. Lawrence were in default on their loan. She was not allowed to contact Mr. Lawrence or attempt to collect from him due to his pending bankruptcy. Ms. Gallese informed Ms. Purcell that she was unable to pay the loan and that she should contact appellee. She contacted appellee and reminded her of her obligation on the note and the mortgage on her house. On January 24, 1994, appellee paid NCB $19,497.55, the balance of its loan.
On May 4, 1994, Ms. Gallese executed a cognovit note in favor of appellant for the balance due him in the amount of $35,500. Appellant obtained judgment on this note, on May 12, 1994, and had a lien placed on her house. Ms. Gallese sold her house, with proceeds exceeding $25,000 applied to appellant's lien. At this time, Ms. Gallese and appellant were aware that appellee had paid NCB and intended to sue Ms. Gallese.
On May 5, 1994, appellee filed a complaint against Ms. Gallese for the $19,497.55 she had paid to NCB. After trial to the court on January 24, 1995, the court determined that:
 Appellee was entitled to reimbursement and full indemnity for all amounts paid;
 The transfer to appellant was an effort to defraud appellee;
 Ms. Gallese failed to demonstrate that the transfer to appellant was anything more than a mere gratuity; and,
 Ms. Gallese made the transfers to appellant without receiving equivalent value.
In consideration of these findings, the court:
Granted judgment to appellee for $19,497.55;
 Ordered the transfer from Ms. Gallese to appellant be set aside; and,
 Ordered that the transferred funds were held in constructive trust and were to be returned to appellee.
Ms. Gallese appealed the trial court's decision to this court, which we affirmed. See Dolce v. Lawrence (Dec. 22, 1995), Lake App. No. 95-L-038, unreported ("Dolce I"). In affirming the trial court, we determined that, pursuant to R.C. 1336.04(B), appellee had established certain "badges of fraud" which raised an inference that the transaction was fraudulent. The "badges" were that: the transaction rendered Ms. Gallese insolvent; the parties to the transaction were related; and, inadequate consideration existed for the transaction. Upon a showing of these badges of fraud, it was incumbent upon Ms. Gallese to "go forward with the proof and explain the transaction." We observed that since the trial court concluded Ms. Gallese failed to explain the transaction, and competent credible evidence existed to support its conclusion, we would not disturb the trial court's judgment.
After we affirmed the trial court, appellee attempted to collect her judgment. The trial court set aside the transaction from Ms. Gallese to her father and allowed appellee to collect from Mr. Gallese. Appellant appealed the trial court's order to garnish his bank accounts. In the second appeal, we reversed the trial court, concluding that appellant should have been joined as a party to the original lawsuit. See Dolce v. Lawrence (May 23, 1997), Lake App. No. 96-L-129, unreported ("Dolce II"). In so ruling, we decided that, even though a constructive trust proceeding is an in rem action, the trial court was attempting to impose a personal judgment on appellant, without personal jurisdiction. Id. at 5. Any order contained in the trial court's judgment entry that Mr. Gallese convey $19,497.55 to Ms. Dolce was void ab initio for want of personal jurisdiction. We held that the personal judgment against Ms. Gallese was affirmed, but that a new trial should be ordered for appellee to pursue the fraudulent conveyance claim against appellant.
On remand to the trial court, appellee Dolce amended her complaint to join appellant Gallese as a party. Appellant filed a cross-claim against Ms. Gallese and a third-party complaint against Mr. Lawrence. The third-party complaint against Mr. Lawrence was dismissed due to his bankruptcy. Mr. Gallese voluntarily dismissed the cross-claim against Ms. Gallese. Both appellant and appellee filed motions for summary judgment. The court granted appellee's motion and denied appellant's. In its judgment entry, the trial court wrote:
 "After review of the pleadings, Motions, and materials in the file, the Court finds plaintiff is entitled to judgment as a matter of law as there is no factual dispute that defendants engaged in a fraudulent transaction. With respect to determining defendants' intent under R.C. 1336.04(A)(1), there is ample evidence to substantiate many factors enumerated in R.C. 1336.04(B)(1-11) as well as several `badges of fraud.' First, Gallese is an `insider' under R.C. 1336.01(G)(1)(a) as he is Alaina Lawrence's father. R.C. 1336.04(B)(1). Second, trial testimony reveals Alaina Lawrence was aware that her loan with National City was in default and she was in danger of being sued at the time she executed that note with Gallese. R.C. 1336.04(B)(4). Third, Alaina Lawrence's testimony indicates that the note and subsequent judgment transferred almost all of her assets and rendered her insolvent under R.C. 1336.04(B)(5) and (B)(9). Finally, Gallese did not receive consideration for the cognovit note as his testimony reveals that he gratuitously loaned Alaina Lawrence Thirty-Five Thousand Dollars ($35,000). There is no evidence that Gallese acquired any new consideration or value in exchange for Alaina Lawrence's promise to pay. R.C. 1336.04(B)(8). In addition to establishing defendants' intent, the foregoing factors also satisfy four of the six `badges of fraud' thereby shifting the burden of proof to Gallese to show fair consideration. Dolce I. Nothing in Gallese's Answer to the Second Amended Complaint, Brief in Opposition to plaintiff's Motion for Summary Judgment or his Cross Motion for Summary Judgment offers evidence to overcome his burden of proving fair consideration received for Alaina Lawrence's signing of the note. Thus, plaintiff has met Dresher's standard of demonstrating an absence of genuine issues of material fact as she has proved by clear and convincing evidence that defendants' cognovit note is a fraudulent conveyance which must be set aside."
Mr. Gallese appeals from the trial court's granting summary judgment and raises two assignments of error for our review:
 "[1.] The trial court erred in finding that execution of a note for funds actually advanced was a fraudulent conveyance.
 "[2.] The trial court's ruling deprived appellant of his right to trial by a jury."
While it is easy to understand why the trial court granted summary judgment, having previously found the same transaction fraudulent, this action should be judged separately from the original trial. The current appeal raises issues under the doctrines of collateral estoppel and the "law of the case." Both doctrines attempt to ensure consistency of results in a case and to avoid endless litigation by settling the issues. Such concerns are particularly applicable to the current dispute.
Collateral estoppel balances due process concerns against judicial efficiency by estopping a party, or a person in privity with him, from re-litigating an issue which has already been determined by a court. Goodson v. McDonough Power Equip, Inc.
(1983), 2 Ohio St.3d 193, 443 N.E.2d 978. In Ohio, the general rule is that mutuality of parties is requisite to collateral estoppel, or issue preclusion. Id. As a general principle, collateral estoppel operates only where all of the parties to the present proceeding were bound by the prior judgment. Id. at paragraph one of the syllabus.
Although Mr. Gallese was the main witness in the original trial, he was not a party to it and should not be precluded from litigating the validity of the transfer. Cleveland v. Hogan
(1998), 92 Ohio Misc.2d 34, 42, 699 N.E.2d 1020, 1026, addressed similar policy arguments in not applying collateral estoppel to a non-party as are present in this case. As a non-party, appellant was unable to call his own witnesses, to cross-examine appellee's witnesses, or to present his own defense strategy. Allowing Mr. Gallese to present his own case, using his own strategy, is especially important given the fact that Ms. Gallese and her attorney failed to timely file a demand for a jury trial. Choosing to present a case to a jury, rather than to the court, is but one difference in strategy Mr. Gallese may have chosen had he been a party to the original action. The evidence presented to the trial court in the first trial, while helpful in determining whether issues of fact exist, is not conclusive in determining the outcome of the summary judgment motion. Appellant was not under a duty to completely refute the evidence presented at the original trial, but just to raise a genuine issue of fact.
The law of the case provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan
(1984), 11 Ohio St.3d 1, 3, 462 N.E.2d 410. The law of the case "is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." Id., citing Gohman v. St. Bernard (1924), 111 Ohio St. 726,730-731, 146 N.E. 291-292. Here, the law of the case does not apply to the trial court's original ruling that the transaction was fraudulent or our affirmance of it in Dolce I.
First, in Dolce II, we ruled that the order for appellant to pay appellee was void ab initio. Secondly, even if the transaction were fraudulent with respect to Ms. Gallese, under R.C. 1336.08(A), appellant could rebut a presumption of fraud by demonstrating that he participated in the transfer in good faith and paid reasonably equivalent value. Baker Sons Equip. Co. v.GSO Equip. Leasing, Inc. (1993), 87 Ohio App.3d 644, 650-651,622 N.E.2d 1113. It would, thus, be unjust to bind appellant to the previous determination that the transaction was fraudulent, made before he was a party to the action.
Both of appellant's errors essentially assert that the trial court erred in granting summary judgment in favor of appellee; therefore, we will discuss both assignments together. Appellant argues that evidence sufficient to overcome appellee's motion for summary judgment exists to show that the transaction between him and Ms. Gallese was not fraudulent. We agree.
Pursuant to Civ.R. 56(C), a party is entitled to summary judgment if she can demonstrate that there exists no genuine issue as to any material fact and that she is entitled to judgment as a matter of law. See Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264. Civ.R. 56(E) provides that an adverse party must not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Affidavits are not required to overcome a motion for summary judgment. Under Civ.R. 56(C), summary judgment cannot be rendered if, after construing the evidence most strongly in favor of the non-moving party, genuine issues of material fact can be shown through sources, such as, pleadings, depositions, answers to interrogatories, or transcripts of evidence in the pending case.
As defined in Ohio's uniform fraudulent transfer act, at R.C.1336.01(L), a "transfer" includes the creation of a lien or other encumbrance. By executing the cognovit note, appellant and Ms. Gallese created a lien on her property, which is within the definition of transfer as set forth in the uniform fraudulent transfer act.
To prevail on her motion for summary judgment, appellee was required to show that there was no genuine issue of material fact that either:
 (1) Under R.C. 1336.04(A)(1), Ms. Gallese made the transfer to appellant with the actual intent to hinder, delay, or defraud appellee; or,
 (2) Under R.C. 1336.04(A)(2), Ms. Gallese made the transfer without receiving a reasonably equivalent value in exchange, and at the time of or as a result of the transaction she intended to incur debts beyond her ability to pay as they became due.
Factors used by a trier of fact to determine whether Ms. Gallese had actual intent to defraud are set forth in R.C.1336.04(B), and are commonly referred to as "badges of fraud." There is no dispute that many of these "badges" apply to the transaction in question. As set forth by the trial court, it was between a father and a daughter, Ms. Gallese was aware that her loan with NCB was in default and that she was in danger of being sued at the time she executed that note with appellant, and it rendered her insolvent. However, under R.C. 1336.08(A), appellant could defeat appellee's motion for summary judgment if he could show that a genuine dispute existed about whether he took the note in good faith and for a reasonably equivalent value.
If a genuine dispute existed about whether the transfer was supported by a reasonably equivalent value, then summary judgment was not appropriate under either R.C. 1336.04(A)(1) or (A)(2).
The trial court asserted that the transfer was fraudulent because "[t]here [was] no evidence that Gallese acquired any new consideration or value in exchange for Alaina Lawrence's promise to pay." At issue is not whether appellant Gallese received fair consideration for Ms. Gallese signing the note, but whether the transaction was supported by fair equivalent value. Clearly, Ms. Gallese received no new consideration for signing the cognovit note. However, value, as defined by R.C. 1336.03(A), is given when in exchange for a transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. Appellant's contention is that value was given for the note, under R.C. 1336.03(A), because it secured a past loan.
Construing the evidence most strongly in favor of appellant, he has created a factual question as to whether Ms. Gallese received fair equivalent value for her transfer. There is no factual dispute that Mr. Lawrence failed to repay both appellant and appellee and that Ms. Gallese owed appellee, Ms. Dolce, $19,497.55, which she never paid. However, a factual dispute exists about whether appellant lent Ms. Gallese $35,500 and, assuming that he did lend her that money, whether he had excused her from repaying him.
Certainly there is evidence which supports appellee's position that Ms. Gallese did not owe appellant $35,500 in antecedent debts. Mr. Lawrence, appearing as a witness for his grandmother, testified that the loan from appellant was to him and not to Ms. Gallese. Ms. Gallese made no mention of her purported debt to her father during her divorce proceeding. However, other evidence was presented at trial to refute appellee's position, such as: stubs for checks written by appellant to Mr. Lawrence that had notations which indicated that the money was for a store owned by both Lawrences; the testimony of Ms. Gallese suggested that the loan was to both Mr. Lawrence and Ms. Gallese; and, the fact that both parties applied for the loan from NCB to repay appellant. This evidence presented raised issues of fact as to whether there was a reasonably equivalent value paid for Ms. Gallese's note. These issues could only be resolved through assessments of weight and credibility by a fact finder. Their resolution was not appropriate in a summary judgment exercise.
Based on the foregoing considerations, we hold that the trial court erred in granting summary judgment.
We reverse and remand for a trial on the merits.
 __________________________________________ JUDGE ROBERT A. NADER
FORD, P.J., CHRISTLEY, J., concur.